Gary A. Hecker (State Bar No. 099008)
ghecker@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
1925 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 286-0377

Michael C. Wilson (admitted *Pro Hac Vice*)
mwilson@munckwilson.com
S. Wallace Dunwoody (admitted *Pro Hac Vice*)
wdunwoody@munckwilson.com
Jordan C. Strauss (admitted *Pro Hac Vice*)
jstrauss@munckwilson.com
Jared M. Hoggan (admitted *Pro Hac Vice*)
jhoggan@munckwilson.com
Elliott C. Riches (admitted *Pro Hac Vice)*
eriches@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Tel: (972) 628-3600

Counsel for Plaintiff Ceiva Opco, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CEIVA OPCO, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON, INC., a Delaware Corporation,<br><br>Defendant. | Civil Action No. 2:22-cv-02709-AB-MAA<br><br>(Hon. André Birotte Jr.)<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUMMARY JUDGMENT MOTION**<br><br>*Filed concurrently with Proposed Order and Declaration of S. Wallace Dunwoody*<br><br>Date:  January 12, 2024<br>Time:  10:00 a.m.<br>Courtroom:  7B<br><br>Trial: March 26, 2024 |

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

# TABLE OF CONTENTS

I.    Introduction ........................................................................................... 1

II.   Background............................................................................................. 2

III.  Arguments and Authorities .................................................................. 10

   A.   Amazon fails to show clear and convincing evidence of ineligibility. ....... 10

      1.   The claims fall squarely within §101's plain text. .................... 10

      2.   The claims are not directed to an abstract idea........................... 12

      3.   The claimed combinations are inventive. ................................... 16

   B.   Amazon is not entitled to summary judgment on infringement................. 22

IV.   Conclusion........................................................................................... 25

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

# TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*3M Innovative rops. Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013) ...................................................................23

*Adasa Inc. v. Avery Dennison Corp.*,
  55 F.4th 900 (Fed. Cir. 2022) ......................................................................13

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ...................................................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ....................................................2, 11, 12, 16, 18

*Amdocs (Israel) Limited v. Openet Telecom, Inc.*,
  841 F.3d 1288 (Fed. Cir. 2016) .............................................................18, 19

*Ancora Techs., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) .............................................................14, 21

*Avid Tech., Inc. v. Harmonic, Inc.*,
  812 F.3d 1040 (Fed. Cir. 2016) ...................................................................24

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) ...................................................................22

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) .............................................................*passim*

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) .................................................16, 18, 21, 22

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .............................................................................1, 11

*Burr v. Duryee*,
  68 U.S. (1 Wall.) 531 (1863) .......................................................................12

*CardioNet, LLC v. InfoBionic, Inc*,
  955 F.3d 1358 (Fed. Cir. 2020) .............................................................1, 15

*Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*,
  482 F.3d 1347 (Fed. Cir. 2007) .............................................................22, 23

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ...................................................................20, 21

*Coop. Entm't, Inc. v. Kollective Tech., Inc.*,
   50 F.4th 127 (Fed. Cir. 2022) ............................................................................13

*Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*,
   880 F.3d 1356 (Fed. Cir. 2018) .........................................................................14

*CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*,
   15 F.4th 1091 (Fed. Cir. 2021) ....................................................................19, 20

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018) ...........................................................................14

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ....................................................................14, 15

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ......................................................................................2, 11

*Ecolab, Inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009) .........................................................................25

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) .........................................................12, 14, 15, 19

*EscapeX IP LLC v. Block, Inc.*,
   652 F.Supp.3d 396 (S.D.N.Y. 2023) .................................................................20

*Finjan, Inc. v. Blue Coat System, Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018) .......................................................................5, 14

*GoDaddy.com, LLC v. RPost Communications Ltd.*,
   No. CV-14-00126-PHX-JAT, 2015 WL 6468370 (D. Ariz. Oct. 27, 2015) .....23

*Google LLC v. EcoFactor, Inc.*,
   602 F. Supp. 3d 1265 (N.D. Cal. 2022) .............................................................21

*Henry Schein, Inc. v. Archer and White Sales, Inc.*,
   139 S. Ct. 524 (2019) ........................................................................................12

*Intell. Ventures I, LLC v. Motorola Mobility LLC*,
   81 F. Supp. 3d 356 (D. Del. 2015) ....................................................................20

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

*Intell. Ventures I LLC v. AT&T Mobility LLC*,
  235 F. Supp. 3d 577 (D. Del. 2016) ...................................................... 20

*Johnson v. Mammoth Recreations, Inc.*,
  975 F.2d 604 (9th Cir. 1992) ............................................................... 23

*Kaneka Corp. v. Zhejiang Med. Co., Ltd.*,
  No. cv-11-02389 SJO, 2018 WL 2718036 (C.D. Cal. Apr. 5, 2018) ........... 22, 23

*Koninklijke KPN N.V. v. Gemalto M2M GmbH*,
  942 F.3d 1143 (Fed. Cir. 2019) ........................................................... 13

*Mallinckrodt, Inc. v. Masimo Corp.*,
  254 F. Supp. 2d 1140 (C.D. Cal. 2003) ................................................ 23

*Malvern Panalytical Inc. v. TA Instruments-Waters LLC*,
  85 F.4th 1365 (Fed. Cir. 2023) ........................................................... 25

*Mass Engineered Design, Inc. v. Planar Sys., Inc.*,
  No. 3:16-CV-1510-SI, 2017 WL 11820360 (D. Or. Aug. 31, 2017) ............ 23

*Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
  839 F.3d 1111 (Fed. Cir. 2016) ........................................................... 25

*Mobile Equity Corp. v. Walmart Inc.*,
  No. 2:21-cv-00126-JRG-RSP, 2022 WL 19917854
  (E.D. Tex. Sept. 23, 2022) ................................................................. 22

*MyMail, Ltd. v. ooVoo, LLC*,
  No. 2020-1825, 2021 WL 3671364 (Fed. Cir. Aug. 19, 2021) ................... 20

*Noyes v. Kelly Servs.*,
  488 F.3d 1163 (9th Cir. 2007) ............................................................ 23

*Packet Intelligence LLC v. NetScout Sys., Inc.*,
  965 F.3d 1299 (Fed. Cir. 2020) ........................................................... 21

*Palo Alto Research Center, Inc. v. Facebook, Inc.*,
  No. 2:20-cv-10753-AB-MRW, 2021 WL 1583906
  (C.D. Cal. Mar. 16, 2021) .................................................................. 12

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) ............................................................. 16

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 F. App'x 1014 (Fed. Cir. 2017)....................................................20

*Rotkiske v. Klemm*,
  140 S. Ct. 355 (2019) ........................................................................12

*SAGE Electrochromics Inc. v. View Inc.*,
  No. C-12-06441 JST (DMR), 2014 WL 1998049 (N.D. Cal. May 15, 2014)...23

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
  873 F.3d 905 (Fed. Cir. 2017) ......................................................3, 16

*SRI Int'l, Inc. v. Cisco Sys. Inc.*,
  930 F.3d 1295 (Fed. Cir. 2019) ...................................................13, 21

*TecSec, Inc. v. Adobe Inc.*,
  978 F.3d 1278 (Fed. Cir. 2020) ...................................................12, 14

*Thales Visionix Inc. v. United States*,
  850 F.3d 1343 (Fed. Cir. 2017) ........................................................14

*In re TLI Commc'ns LLC Pat. Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..........................................................16

*Trivascular, Inc. v. Samuels*,
  812 F.3d 1056 (Fed. Cir. 2016) ........................................................24

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
  957 F.3d 1303 (Fed. Cir. 2020) ........................................................13

*Universal Secure Registry LLC v. Apple Inc.*,
  10 F.4th 1342 (2021) ........................................................................21

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ........................................................14

**Statutes**

35 U.S.C. § 101............................................................................*passim*

35 U.S.C. § 103 ....................................................................................21

35 U.S.C. § 112 ....................................................................................22

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

**Other Authorities**

FED. R. CIV. P. 16(b) ............................................................................................2, 23

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

# REPRESENTATIVE CLAIMS

**U.S. Pat. 6,442,573 (claim 19)**

19. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and

wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

**U.S. Pat. 9,203,930 (claim 3)**

1. A digital display apparatus having an integrated housing, said integrated housing comprising:

an image display region on an outside surface of said integrated housing;

a memory in an inside of said integrated housing, said memory comprising a plurality of image data files, security information comprising authentication information for a first remote server system and a unique identifier for said digital display apparatus, and a current version of onboard software;

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

a processor configured to control the display of image data from said plurality of image data files in said image display region in accordance with said onboard software in said inside of said integrated housing;

communication circuitry configured to engage a network medium in said inside of said integrated housing under the control of said processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from said plurality of image data files in said memory for rendering in said image display region[;]

a remote connection function configured to automatically initiate communications with said first remote server system across said network medium, said remote connection function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

a software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

[2. The digital display apparatus of claim 1] wherein said authentication function is further configured to provide said unique identifier of said digital display apparatus to said first remote server system.

[3. The digital display apparatus of claim 2] wherein said authentication function is further configured to provide device authentication information to said first remote server system prior to obtaining image data from said first remote server system.

**U.S. Pat. 9,654,562 (claim 16)**

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:

said display screen;

a central processing unit;

a video controller configured to control display of said content on said display screen;

a communications interface configured to communicate with said server system via said communications network;

a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:

upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;

sending by said apparatus said unique identifier to said server system;

sending by said apparatus said version identifier to said server system;

prompting by said apparatus a user of said apparatus to create an account at said server system;

receiving by said apparatus updated computer readable instructions for controlling the operation of said apparatus from said server system;

updating by said apparatus said computer readable instructions in said memory with said updated computer readable instructions;

receiving by said apparatus updated content from said server system;

displaying by said apparatus said updated content on said display screen.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

[16. The apparatus of claim 1] wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system.

**U.S. Pat. 9,124,656 (claim 5)**

1. A display device for displaying image data received from a server system comprising:

a central processing unit;

a display screen for displaying said image data;

a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

[5. The display device of claim 1] wherein said memory further comprises preference information for controlling the display of said image data by said display device.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

**TABLE OF EXHIBITS**[1]

| Ex. No. | Document Description |
|---|---|
| 1 | Excerpts from Amazon SEC 8-K of April 26, 2000, Bates numbers AMZ_CEIVA00150582-AMZ_CEIVA00150595 |
| 2 | Amazon.com press release, dated March 27, 2000, Bates numbers Ceiva-A 00008440-Ceiva-A 00008443 |
| 3 | Amazon.com newspaper advertisement for the Ceiva Frame, Bates number Ceiva-A 00008651 |
| 4 | Amazon.com advertisement for Ceiva Frame, Bates number Ceiva-A 00056116 |
| 5 | MIT *The Tech* article dated November 22, 2002, titled "Gadget Review: Ceiva Digital Photo Receiver," Bates numbers CEIVA_3P_000008-CEIVA_3P_000010 |
| 6 | Excerpt from Ceiva Logic March Status and Clip Report, PCWorld.com article, Bates numbers Ceiva-A 00016890-Ceiva-A 00016922 |
| 7 | Excerpt from Ceiva Logic April Status and Clip Report, PC Magazine article dated April 18, 2000, titled "Ceiva Digital Picture Frame," Bates numbers Ceiva-A 00016923-Ceiva-A 00016970 |
| 8 | Wall Street Journal articles dated February 3, 2000, titled "This Frame Fetches Photos From the Net," and December 1, 2004, titled "Photo Downloads for the PC-Averse," Bates numbers CEIVA_3P_000086-000096 |
| 9 | Fortune Magazine article dated March 5, 2001, titled "The Future In A Picture Frame," Bates numbers CEIVA_3P_000078-CEIVA_3P_000079 |

---

[1] Exhibits 1-15 are attached to the Declaration of S. Wallace Dunwoody filed concurrently herewith.

| Ex. No. | Document Description |
|---|---|
| 10 | CNN Transcript dated October 10, 2000, titled "'Technogadget Guy' Reviews Digital Photo Technology," Bates numbers CEIVA_3P_000002-CEIVA_3P_000006 |
| 11 | *The Gadgeteer* article dated May 6, 2002, titled "Ceiva Internet Connected Digital Picture Frame Review," Bates numbers Ceiva-A 00008455-00008465 |
| 12 | Note from President Clinton to Ron Burkle, dated March 17, 2000, Bates number Ceiva-A 00008624 |
| 13 | Excerpts from transcript of CBS The Saturday Early Show, dated April 8, 2000, Bates numbers CEIVA_3P_000018-000076 |
| 14 | Excerpts from the Rebuttal Expert Report on Invalidity of William C. Easttom II, Ph.D. ("Easttom Rebuttal") |
| 15 | Excerpts of the August 24, 2023, Infringement Expert Report of Stephen A. Edwards, Ph.D. |

## CITED DOCKET ENTRIES

| Dkt. No. | Document Description |
|---|---|
| 1-5 | Amazon press release of March 27, 2000 |
| 28-1 | U.S. Patent No. 6,442,573 |
| 28-2 | U.S. Patent No. 9,203,930 |
| 28-3 | U.S. Patent No. 9,654,562 |
| 28-4 | U.S. Patent No. 9,124,656 |
| 34 | Joint Stipulation for Entry of Schedule for Infringement Contentions / Invalidity Contentions and Regarding Claim Construction |
| 41 | Order Granting Stipulation for Entry of Schedule for Infringement / Invalidity Contentions and Regarding Claim Construction |
| 45 | Joint Claim Construction and Prehearing Statement |

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

| 47 | Order Regarding Claim Construction |
| 78 | Amazon's Motion for Summary Judgment of Invalidity and Non-Infringement |

### CITED *CEIVA I* DOCKET ENTRIES[2]

| Dkt. No. | Document Description |
| --- | --- |
| 48 | Order Denying Without Prejudice Defendant's Motion to Dismiss First Amended Complaint |
| 97 | Claim Construction Order |

---

[2] Docket numbers identified herein are from predecessor litigation *Ceiva Logic v. Amazon.com*, No. 2:19-cv-09129-AB-MAA (C.D. Cal.) ("*Ceiva I*").

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

## I.      Introduction

Amazon's §101 challenge fails now for at least the same reason it failed before—"an issue of fact exists" as to whether the ordered combination of elements recited in the claims was unique, inventive, and non-abstract. *See Ceiva Logic v. Amazon.com*, No. 2:19-cv-09129-AB-MAA (C.D. Cal.) ("*Ceiva I*"), Dkt. 48 at 12-13.

The Court previously *declined* at Step 1 to "reach a final determination" that the claims were "directed to" an abstract idea, and *affirmatively found* at Step 2 that "an issue of fact exists as to whether the ordered combination of limitations in the Asserted Patents discloses an inventive concept that transforms the abstract idea into a patentable invention." *Id.* at 10-12. The "specification," the Court found, supports that "the specific configuration of limitations in the claims *** was unconventional and adds an inventive element because the specific configuration allows content to be sent to the frame automatically, without user input." *Id.* at 12. "[T]he specification states the invention solves the problem[s] that previously, storage media had to be physically inserted in a frame," and "that functions in the prior art [could not] be remotely updated, modified, or otherwise changed." *Id.*

At Step 1, those same findings *should be* enough for the Court to hold that the patent claims are "directed to" solving those technical problems.[3] Alternatively, at Step 2, Amazon has failed show that "no issue of fact exists as to whether the ordered combination of limitations is unique or inventive." *Id.* The record evidence (including the *specification itself* and *Amazon's own statements*) disproves Amazon's assertion that a POSA in 1999 would view the claimed inventions as merely applying well-

---

[3] Amazon agrees that "*Alice* Step 1" presents "an issue of law that can be resolved based on the intrinsic evidence alone." Dkt. 78 at 16 (citing *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1373 (Fed. Cir. 2020)). "The §101 patent-eligibility inquiry is only a threshold test," *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), and any "comparison of the prior art and the claims to determine if the claims are, in fact, an improvement over the prior art" is reserved "for §§ 102 and 103." *CardioNet,* 955 F.3d at 1372. Here, the intrinsic evidence shows "that the claims are directed to improving the functionality of a computer or network." *Id.* at 1373.

known, routine, and conventional technology to reach expected results. Reviews on the first commercial embodiment—from MIT, PC Magazine, PCWorld, *etc.*, *raving* about its features, benefits, and ingenuity—should carry more weight than what Amazon's paid expert says decades later. Regardless, these factual disputes cannot be resolved on summary judgment because Ceiva's expert, Dr. Easttom, rebuts Amazon's position and provides detailed and credible opinions that the ordered combinations in the claims were unique, inventive, new, useful, and unconventional. As before, Amazon's §101 motion should be denied.

\* \* \*

Amazon's non-infringement argument must also be denied. It hinges on a new proposed limiting construction of the term "authentication" based on statements made during prosecution. Not only do the prosecution statements fail to show a clear and unmistakable disclaimer of claim scope, it is too late for Amazon to argue new claim constructions. The time to do it was during the claim construction phase of the case. Amazon cannot show good cause under Rule 16(b) to raise it now.

## II.    Background

Long before anyone was worried that §101's exclusion of "laws of nature, natural phenomena, and abstract ideas," *Diamond v. Diehr*, 450 U.S. 175, 185 (1981), might someday "swallow all of patent law," *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014), the inventors at Ceiva applied for, and ultimately received, the four asserted patents at issue: U.S. Patent Nos. 6,442,573 (the '573 Patent) (Dkt. 28-1), 9,203,930 (the '930 Patent) (Dkt. 28-2), 9,654,562 (the '562 Patent) (Dkt. 28-3), and 9,124,656 (the '656 Patent) (Dkt. 28-4).

The patents describe quintessentially *technological* improvements to a machine—a digital display device. As the Court already found, "the specification states the invention solves the problem[s] that previously, storage media had to be physically inserted in a frame," and "that functions in the prior art [could not] be remotely updated, modified, or otherwise changed." *Ceiva I*, Dkt. 48 at 12-13 (citing '573

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

Patent at 2:15-25)). The specification explains, explicitly, that the *solutions* for *how* to "remotely update, modify, or otherwise change" a digital picture frame involved more than just applying *routine* and *conventional* computer networking techniques:

> There are several different techniques for propagating data to devices connected to the network. For example, *electronic mail, client pull, and server push mechanisms all are examples* of techniques that provide a way to transmit data to a client computer. However, *these techniques lack a mechanism for establishing and then controlling the behavior of a device from a remote location*. For example, these techniques cannot dynamically obtain image data from a networked data source and then display that data according to the behavior criteria established by an authorized user. '573 Patent at 2:52-61 (emphasis added).

Email systems, for example, could send and receive image files as attachments, but required a user to complete numerous steps to connect, download, and view the attachments, *id.* at 3:44-53; they also required setup configuration and were incapable of automatically connecting, requesting, and displaying images according to specified preferences. *Id.* at 3:54-4:12. Web browsers could request, download, and display images from a webpage using "the client pull technique," *id.* at 4:14-44, but required a user at a computer to enter a URL to initiate a request and could not automatically connect or obtain device-specific content, such as images and software for a particular user or device. *Id.* at 5:11-23. "Another problem associated with client pull is that it d[id] not provide a way to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user)," *id.* at 5:24-27, and did not offer a way to update or control the client device. *Id.* at 5:30-35. Furthermore, "server push techniques," such as those used for "stock market quotes" or "the active desktop included with Internet Explorer," required user-setup and configuration "to inform [a] server what type of data to send and how often." *Id.* at 5:36-6:5. After that, "data is transmitted in a unidirectional manner" from server to client with no way to control the client device or "to ensure data is displayed only to an intended recipient (e.g. a particular device and/or a particular user)." *Id.* at 6:14-24. "None of the prior art

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

devices and/or systems" provided "a way to distribute image data to a customizable frame device[]." *Id.* at 6:25-27. They all lacked "a mechanism for remotely customizing the behavior of each frame device." *Id.* at 6:27-30.

Against that backdrop, the patents do not describe or claim the "idea of displaying images on a digital picture frame" or "adding generic internet connectivity" to existing frames, as Amazon contends. Dkt. 78 at 2. They describe and claim an improved digital display device that employs concrete, non-conventional configurations to enable the device to do something it could not do before—"to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user," '573 Patent at 1:50-53, solving the technological "problem that previously, storage media had to be physically inserted in a frame," and "that functions in the prior art [could not] be remotely updated, modified, or otherwise changed." *Ceiva I*, Dkt. 48 at 12-13.

When the first commercial embodiment hit the market in March 2000, Amazon immediately hailed it as "revolutionary" and "anything but traditional."[4] MIT, PCWorld, PC Magazine, the Wall Street Journal, Fortune, CNN, President Clinton, and many others praised its ingenuity,[5] including networking functions, plug-and-play

---

[4] *See* Easttom Rebuttal ¶¶504-511; Ex. 1; Dkt. 1-5; Ex. 2; Ex. 3; Ex. 4.

[5] *See* Easttom Rebuttal ¶¶479-503; Ex. 5 (MIT: *The Tech*: "a brilliant solution," "requires almost no technical knowledge," "simple installation *** plug in the phoneline, plug in power," "configuration information, entered through the Ceiva Web site," "automatically download new images," "an amazing blend of various technologies," "ease of use of the receiving frame," "very impressed with almost all aspects of this system," "reconfigured itself," "impressed with the robustness of the system"); Ex. 6 (PCWorld.com: Ceiva "sets out to revolutionize photo sharing *** the device automatically downloads your photos from Ceiva's Web-based photo sharing service, without the assistance of a computer. *** it is no traditional picture frame *** Setting up the Ceiva frame requires practically no effort"); Ex. 7 (PC Magazine: "The concept is ingenious: *** Its ease of use makes the Ceiva ideal for sharing photos with relatives who don't have PCs. *** the unit automatically logs on to the Ceiva Web site and downloads any new images posted to its account. *** maintenance and configuration is handled through the easy-to-use Web service. ***

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

setup, remote user interface, automatic download-and-display, and software updates, identifying those as technological innovations providing new and useful functionality and improvements over then-existing devices. Dr. Easttom provides detailed explanations of (1) the state of the art at the time of the invention, Ex. 14, Easttom Rebuttal ¶¶78-118; (2) the patents and their prosecution history, *id.* ¶¶119-210; (3) the *contemporaneous* accolades and industry praise for the inventiveness of the first commercial embodiment, the Ceiva Frame, and its improvements over the prior art, *id.* ¶¶479-522; and (4) how the patent claims are directed to *technological* improvements, rooted in computer and networking science, not abstract ideas implemented using routine and conventional knowledge. *Id.* ¶¶217-313.

Although the patents share a common specification, the claims in each patent recite different combinations of elements aimed at protecting distinct aspects of Ceiva's invention. The following claims are representative: '573 Patent, claim 19; '930 Patent, claim 3; '562 Patent, claim 16; and '656 Patent, claim 5.

**Claim 19 of the '573 Patent** recites a "*system* for distributing image data" that includes a "digital picture frame" network-connected to a "server system" and controllable through a "remote user interface." At the time of the invention in 1999, "it was not routine, conventional, or well-known to have a digital frame device that could be remotely controlled and updated." Ex. 14, Easttom Rebuttal ¶286. "The claims require a non-conventional distributed network architecture for delivering

---

[it] revolutionizes image sharing without all the hassles of high technology. *** it's a no-maintenance, trouble-free gadget that will entertain and delight."); Ex. 8 (WSJ: "magic," a "pioneering product, launching a whole new category of digital, Internet-enabled picture frames," "No Web knowledge or user intervention is required. It just works."); Ex. 9 (Fortune: "easy to use *** dead simple."); Ex. 10 (CNN: "Ed Curran, TechnoGadget Guy": "it's just amazing *** It updates itself. *** just plug it in … and forget about it. It's all set to go."); Ex. 11 at Ceiva-A 00008457 (Gadgeteer: "ridiculously easy" setup); Easttom Rebuttal ¶286 (Oprah: "unbelievable" and "amazing"); Ex. 12 (President Clinton: "I love it! I have it on my desk and am fascinated by it. Technology has come such a long way in a short time."); Ex. 13 (comparing to prior art).

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

image data to and controlling the behavior of a digital display device," using an unconventional combination of hardware elements—including a digital picture frame, remote user interface, and server system connected to the frame device and the user interface—and software configurations causing "the frame device to automatically and securely connect to the server system, obtain software updates, obtain new images and behavior preferences, and operate according to the remotely specified behavior characteristics." *Id.* ¶296. This "was different from prior art digital picture frames that were not network connected, did not have a remote user interface, and could not be remotely controlled and updated." *Id.* ¶297. The claimed combination offered improvements in the functioning of the digital picture frame itself and improved on "other ways of sharing images over a network," combining an automatic download-and-display function with "the ability to remotely control the behavior characteristics of the frame device." *Id.* ¶299. "This was not a generic system; it was unconventional, and the complex interactions of these technologies was innovative—a point that is most clearly demonstrated by the industry praise." *Id.* ¶303.[6]

**Claim 3 of the '930 Patent** recites "a digital display apparatus," focusing on the apparatus itself and how it is configured, including details about the apparatus's hardware (e.g., it has a "housing" with an "image display region" on an outer surface and a "memory," "processor," and "communications circuitry" inside the housing)

---

[6] The claimed combination, for example, offered "technological improvements over the prior art frame devices that (a) did not connect with servers and (b) could not periodically update image data or preferences. The periodic relay of image data and preferences allows the benefit of cloud storage, including lessening device memory requirements in the frame device while periodically rotating through images in memory, and also allows preference data such as image lists or display instructions to be regularly updated." Easttom Rebuttal ¶246. The "technological innovation" of using "a remote server for image upload, processing and storage for later viewing in a user device reduced the device complexity and cost by minimizing the need for large amounts of memory and reducing requirement for storage, processing and transfer in a user's separate computer." *Id.* ¶266. This "was a pioneering step in technology to what we would now describe as 'cloud storage.'" *Id.* ¶122.

and software. The software includes "an image display function," "a remote connection function," "an authentication function," and "a software update function." In addition to technical improvements discussed above, the "remote connection function" offers advantages over prior art web browsers and email applications because it configures the digital display apparatus to automatically connect to a remote server to obtain new images and then display them. *See* Ex. 14, Easttom Rebuttal ¶251-53 (this was a "significant technological improvement"; it "allowed users with little technical knowhow and [no] separate computer" to "make automated requests for image data from a network server and retrieve them directly to the frame device, rather than requiring the user to download, format, save, and transfer image data files through a separate computer device."); *see also* '573 Patent at 9:30-10:7. Further, the "authentication function" utilizing a "unique identifier in memory" offers benefits over the prior art mechanisms and enabled the apparatus to identify itself "to the server system as part of the secure communications protocol." *Id.* ¶261; *see* '573 Patent at 17:66-20:61. This "two-way authentication function" was "a technological improvement over prior art" and "solved the potential problem of insecure data transfer involving the photo frame devices," *id.* ¶254, including how to securely transfer "image and preference data to *only* the *specific* authorized display device." *Id.* ¶263. This improved on "prior art products and systems" because "the data *to be sent*" can be "determined by the server system" and provided to "that unique device." *Id.* ¶253. The prior art did not "'provide a way to ensure that data intended for display at a certain device is only sent to that device (e.g., a device with a unique serial number).'" *Id.* ¶292 (quoting '573 Patent at 5:27-30). The "software update function," moreover, offered "a technological improvement" over the prior art with "the ability to remotely add new features, control settings, and change preferences in the claimed frame devices from authorized networked servers or computers via the secure, authenticated communications structure." *Id.* ¶255; *see* '573 Patent at 11:50-63; 20:62-21:1; 29:41-59. Taken together, the claimed combination recites technical

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

improvements over the prior art enabling improved device setup, network security, software updates, and control from a remote location—which, as discussed above, were all widely viewed as *significant* technological improvements over the prior art.

**Claim 16 of the '562 Patent** recites an "apparatus for displaying … image data received from a server system … on a display screen." The claimed combination recites "elements aimed at improving on shortcomings in prior products." Ex. 14, Easttom Rebuttal ¶260. In addition to other technical benefits already discussed,[7] the claimed "version identifier in memory" enables the apparatus to identify "the current software version to the server system using the secure communications protocol so the server system can provide the benefit of software updates if needed." *Id.* ¶261. Sending a "version identifier" to a server system "is a technological improvement over the prior art because it minimizes the need for software downloads and shifts identification of update requirements from the image display device to the network server." *Id.* ¶264. "The remote server can then use that information to determine whether software updates are required, and if so, which update(s) should be sent to that particular device via the secure communications protocol." *Id.* ¶264. This "eliminates the need for a user" to perform update steps and "increases security by ensuring that the transfer of version information and the download of software updates occur only within secure communications with authorized remote servers." *Id.* ¶264. Furthermore, configuring the *apparatus* to initiate a communication session with a server system "upon connection to a power source and a communication source" was "a significant technological improvement" and "overcame shortcomings in prior networked computing devices." *Id.* ¶262. Additionally, prompting the user "to create

---

[7] "[A] network communications interface into an image display device was a technological improvement" allowing it to "obtain image and software updates from a remote server system without the need for an external local computer." Easttom Rebuttal ¶260. "[A] unique identifier in memory allows the product to be authenticated to the server system as part of the secure communications protocol." *Id.* ¶261.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

an account at [the] server system" was a "technological improvement" that "allows a user to initialize or create an account for purposes of registration, further eliminating the requirement for a separate computer and technical know-how if the account was not previously set up." *Id.* ¶265. The claimed combination offered technological advancements over the prior art, enabling a plug-and-play simple setup, that was repeatedly praised as pioneering, new, and useful. *See supra* n.5.

**Claim 5 of the '656 Patent** recites a "display device for displaying image data received from a remote server system," configured to "upon connection to a power source and a communication source and prior to receiving any input from a user … automatically initiate a communications session with [the] server system," "automatically update[e the] computer readable instructions for controlling the operation of [the] display device," and "instruct[ the] server system to create an interface accessible by a web browser for managing behavior characteristics of [the] display device." In addition to other benefits over the prior art already discussed, *see* Ex. 14, Easttom Rebuttal ¶¶270-278, these limitations "improve[] over prior art because they allow simplification of the device user interface, despite maintaining complex functionality," and "allow for maintenance and update of the device, including display preferences, without needing direct access to the device, use of a standalone separate computer, or an individual with the know-how necessary to download, transfer and install such updates in physical contact with the device." *Id.* ¶275. Furthermore, instructing the server to create a web-browser interface is "an improvement over prior art because it allows for creation of a web-browser-based device management interface for use with the remote server system not present in the prior art. This interface can then be used by authorized users to manage device settings and preferences remotely through the secure communications protocol that allows secure transfer of image and preference data to only the specific authorized display device." *Id.* ¶276. The specific combination of elements recited in the claims enables the display device "to be remotely managed from the server system or a web-based

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

user interface." *Id.* ¶278. This unique combination of elements, alone or in combination with others already discussed, were not conventional and represent technical improvements over the prior art.[8]

\* \* \*

The representative claims each recite "a device, namely a digital display device or picture frame unlike those that previously existed (or in the case of the '573 Patent, a system comprising such an improved digital picture frame)." *Id.* ¶279. The claimed combinations recite "tangible products that interact in the real world with other devices and with humans to complete processes that are unable to be done by humans alone." *Id.* "The claims are directed toward these physical interactions between devices or between devices and humans" that "involve digital signaling and communications including instructions, data processing, remote data storage and access, image display, and physical human user inputs (including plugging in power and network connections, registering devices, or inputting settings or preferences into the device)." *Id.* "[T]he claimed inventions (including as implemented in the Ceiva Frame [])" were significant technological improvements on existing digital picture frames and systems that solved multiple deficiencies in prior products." *Id.* ¶282; *see Ceiva I* Dkt. 48 pp.12-13; '573 Patent at 1:56-58, 2:17-22, 2:33-39, and 2:41-4:6.

## III. Arguments and Authorities

### A. Amazon fails to show clear and convincing evidence of ineligibility.

#### 1. The claims fall squarely within §101's plain text.

The Patent Act provides: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. §101. "In patent law, as in all statutory construction, unless otherwise defined, words will be interpreted as taking their

---

[8] The Ceiva Frame did not practice claim 5 of the '656 Patent or send instructions to a server system to create a web interface.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

ordinary, contemporary, common meaning." *Bilski*, 561 U.S. at 603. "[I]n dealing with the patent laws, *** courts should not read into the patent laws limitations and conditions which the legislature has not expressed." *Diehr*, 450 U.S. at 182. By "defin[ing] the subject matter that may be patented," *Bilski*, 561 U.S. at 601, §101 confines patentable subject matter to certain *types* of innovations. Subject matter that falls *outside* the expressly enumerated types is *ineligible* for patenting.

In *Bilski*, the Supreme Court identified three categories of discoveries traditionally viewed as *outside* §101's scope—"laws of nature, physical phenomena, and abstract ideas"—and characterized them as judicial "exceptions" "not required by the statutory text." 561 U.S. at 601.[9] In *Alice*, the Supreme Court "set forth a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217. First, a court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* "If so," the court "asks, what else is there in the claims" to determine whether any "additional elements transform the nature of the claim into a patent-eligible application." *Id.* (cleaned up).[10] *Alice* affirms eligibility of inventions "designed to solve a technological problem in 'conventional industry practice,'" 573 U.S. at 223 (quoting *Diehr*, 450 U.S. at 177), including an "improved computer technology," *id.* at 225, even if "it *involves* an abstract concept." *Id.* at 217.

---

[9] The claimed subject matter in *Bilski* was a "fundamental economic practice" of hedging financial risk that was "not a patentable 'process'" within the meaning of §101, just like the "algorithms" held unpatentable in prior cases. *Id.* at 611 (citing *Gottschalk v. Benson*, 409 U.S. 63 (1972), and *Parker v. Flook*, 437 U.S. 584 (1978)).

[10] *Alice* involved "a computer-implemented scheme for mitigating 'settlement risk' … by using a third-party intermediary." *Id.* at 212. The claim patented "intermediated settlement" with nothing but "generic computer implementation," *id.* at 219, 221, but did not "purport to improve the functioning of the computer itself" or "effect an improvement in any other technology or technical field." *Id.* at 225.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

These judicial exceptions should not preclude eligibility for innovations falling squarely *within* the plain text of §101.[11] To construe them otherwise would conflict with the Supreme Court's approach to statutory interpretation in every other area of law. *See, e.g.*, *Rotkiske v. Klemm*, 140 S. Ct. 355, 360-61 (2019). When a statute "contains no … exception," courts "may not engraft [their] own exceptions onto the statutory text." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Here, the claims indisputably recite a "new and useful … machine" or "improvement thereof" that falls squarely *within* §101's plain text. *See supra* §II; *Burr v. Duryee*, 68 U.S. (1 Wall.) 531, 570 (1863) (defining a "machine" under §101 as "a concrete thing, consisting of parts, or of certain devices and combinations."). Amazon's position on patent-eligibility of the claims at issue should be rejected because it contradicts §101's plain text and renders words in the statute meaningless.

### 2. The claims are not directed to an abstract idea.

At *Alice* step 1, a court determines "whether the claims focus on a specific means or method that improves the relevant technology or are directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Palo Alto Research Center, Inc. v. Facebook, Inc.*, No. 2:20-cv-10753-AB-MRW, 2021 WL 1583906, at *4 (C.D. Cal. Mar. 16, 2021) (quotations omitted). The analysis focuses on "what the *patent* asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020); *id.* at 1294 ("an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance *** is crucial"); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (avoid "overgeneraliz[ations]" leading to "abstractions"). If the focus of the claim is on "improvement to a technological

---

[11] "At some level, all inventions embody, use … or apply laws of nature, natural phenomena, or abstract ideas. An invention is not rendered ineligible … because it *involves* an abstract concept. Applications of such concepts to a new and useful end … remain eligible for patent protection." *Alice*, 573 U.S. at 217 (cleaned up).

process or in the underlying operation of a machine, our inquiry ends and the claim is eligible." *Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022).

Scrutinizing whether a claim recites "generic" or "functional" elements "misses the point—useful improvements to computer networks are patentable regardless of whether the network is comprised of standard computing equipment." *See, e.g.*, *Coop. Entm't, Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131-35 (Fed. Cir. 2022);[12] *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1305-09 (Fed. Cir. 2020). Likewise, a "claimed invention's compatibility with conventional communication systems does not render it abstract," nor must an "improvement" be "defined by reference to 'physical' components." *Uniloc*, 957 F.3d at 1309; *id.* ("Claims need not articulate the advantages of the claimed combinations to be eligible. *** Our precedent is clear that software can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself.").[13]

The Federal Circuit has repeatedly held eligible at Step 1 claims directed to improvements in computer or network functionality. *See, e.g., SRI Int'l, Inc. v. Cisco Sys. Inc.*, 930 F.3d 1295, 1303 (Fed. Cir. 2019) (network monitors); *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1145 (Fed. Cir. 2019) (transmission error detection); *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303-04 (Fed.

---

[12] In *Cooperative Entertainment*, the Federal Circuit skipped straight to Step 2, finding the challenged claim "contains several alleged inventive concepts which the specification touts as specific improvements in the distribution of data compared to the prior art" and the "specification explains how" the claimed "network structure is different from and improves upon the prior art." 50 F.4th at 131-32. Likewise, here, the Court can make essentially the same determination based on the specification.

[13] In *Uniloc*, the *specification* explained that "the invention improve[d] conventional communication systems ***by including a data field*** for polling as part of the inquiry message," enabling "a rapid response time." 957 F.3d at 1305. As a result, the claims were directed to an "improvement to computer functionality" to "overcome a problem specifically arising in the realm of computer networks." *Id.* at 1307-08.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

Cir. 2018) (virus scanning); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1002, 1007–08 (Fed. Cir. 2018) (navigating electronic spreadsheets); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1347-49 (Fed. Cir. 2018) (network security); *Core Wireless Licensing S.A.R.L. v. LG Electronics, Inc.*, 880 F.3d 1356, 1359–63 (Fed. Cir. 2018) (user interface); *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259-60 (Fed. Cir. 2017) (accommodating different processors); *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (configuring sensors); *Enfish*, 822 F.3d at 1336-39 (self-referential database); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257–59 (Fed. Cir. 2014) (hybrid web page).

This Court previously "provided its comments" that the patents "do not appear to contain sufficient specificity to be directed to an improvement in computer functionality." *Ceiva I*, Dkt. 48 at 10. Yet the Court did not "reach a final determination" on "whether the claims are drawn to an abstract idea." *Id.*[14] If the Court is inclined to make a final determination on Step 1 now, it should conclude that Ceiva's claims are *not* directed to an abstract idea. As described in Section II above, the specification (not to mention expert testimony and contemporaneous industry praise) supports that the claims are directed to specific claimed improvements in

---

[14] The Court has suggested the invention "distills down to a digital picture frame able to automatically access a remote data repository to obtain updated content without the use of a computer and without any further user input." *Ceiva I*, Dkt. 48 at 9. Respectfully, that is not "an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *TecSec*, 978 F.3d at 1294. It omits combinations of elements that the *specification* expressly asserts are technical improvements, *see supra* §II, including (i) a user interface, separate and apart from the display device, used to remotely control and customize the display device over a distributed network, which enhances the device's utility and functions; (ii) a unique ID in memory on the device to authenticate the device to the server system, enabling remote control and distribution of device-specific content; (iii) a software version identifier in memory on the device used to install updates over a distributed network, enhancing performance, functionality, and security; and (iv) a self-configuring "plug-and-play" setup. The Court's characterization of the claims omits those asserted technical improvements over the prior art. *See TecSec*, 978 F.3d at 1294; *supra* §II.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

computer and networking technology that improve the performance and functionality of a digital display device, enabling it "to dynamically obtain image data from a networked data source and then display that data according to criteria established by an authorized user," '573 Patent at 1:50-53, and solve the technological "problem that previously, storage media had to be physically inserted in a frame," and "that functions in the prior art [could not] be remotely updated, modified, or otherwise changed." *Ceiva I*, Dkt. 48 at 12-13. At Step 1, "the court may consult the intrinsic evidence and conclude that the claims are directed to improving the functionality of a computer or network." *CardioNet*, at 1373. That *is enough* to end the §101 analysis.

Just as the claims in *Enfish* were "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a *self-referential* table for a computer database," *Enfish*, 822 F.3d at 1337, the claims here are not directed to *any* form of networked digital display, but to "a *self-configuring*" display that "requires only a minimal amount of input from the user," can "automatically access" a remote server to obtain and display device-specific images, and has "a mechanism for remotely customizing the behavior of each frame device" with "a distribution scheme configured to distribute image data to each frame device." *Id.* at 6:25-53.

Just as in *DDR*, the claims here "do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology [] to overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257; *id.* at 1259 ("[N]or do they recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations.").[15]

---

[15] Cases cited by Amazon are consistent with these principles but involve patent specifications that did not focus on solving technical problems with the prior art. *See,*

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

### 3. The claimed combinations are inventive.

At Step 2, the analysis "search[es] for an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (cleaned up). Because this approach "considers all claim elements, both individually and in combination, it is consistent with the general rule that patent claims 'must be considered as a whole.'" *Id.* at 218 n.3 (quoting *Diehr*, 450 U.S. at 188). An inventive concept "may arise in one or more of the individual claim limitations or in the ordered combination of the limitations." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349 (Fed. Cir. 2016).[16]

In *Bascom*, the Federal Circuit found an inventive concept in "the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user." 827 F.3d at 1350. Although "local computers, ISP servers, networks, network accounts, [and] filtering" were not individually assertedly as inventive, and "[f]iltering content on the Internet was

---

*e.g., Affinity Labs of Tex., LLC v. DIRECTV*, LLC, 838 F.3d 1253, 1257-58 (Fed. Cir. 2016) (patent "devoid of any teaching or blueprint explaining how the device can do what it purports to do" with claims "drawn to the idea itself"); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 610-612 (Fed. Cir. 2016) (patent did not identify, much less purport to solve, a technical problem, e.g., "how to combine a camera with a cellular telephone," "transmit images," "append classification information," or "structure [] the server"); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310 (Fed. Cir. 2021) (patent did not identify a technical improvement over prior art; broadly claimed concept for data management); *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905 (Fed. Cir. 2017) (similar).

[16] The "inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art." *Bascom,* at 1350. Whether "a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact," and it is the defendant's burden to prove it "by clear and convincing evidence." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Furthermore, "that something is disclosed in a piece of prior art … does not mean it was well-understood, routine, and conventional." *Id.* at 1369.

already a known concept," the claimed *combination* of elements was patent-eligible because "the *patent* describe[d] how its particular arrangement of elements [offered] a technical improvement over prior art ways of filtering such content." *Id.* at 1345, 1349-50. Here, the Court has already found that "*the specific configuration of components **is the inventive concept***" that "solves the problem that previously, storage media had to be physically inserted in a frame," and "functions in the prior art [could not] be remotely updated, modified, or otherwise changed." *Ceiva I*, Dkt. 48 at 12 (emphasis added).[17] The record evidence of inventiveness is substantial, *supra* §II, including intrinsic evidence, industry accolades and contemporaneous reviews, and expert opinions from Dr. Easttom, demonstrating that *the claimed combinations* (1) *improve the functioning of the digital display itself* and *effect other improvements in computer and networking technology* and the technical field of self-configuring, remote controllable, client devices that may be setup and used without a separate computer; and (2) were not well-understood, routine, and conventional, but rather were, in Amazon's own words, "revolutionary" and "anything but traditional," and widely applauded as new, useful, brilliant, ingenious, pioneering, *etc. See supra* §II.[18]

As in *Bascom*, the *specification* "describes how its particular arrangement of elements is a technical improvement over prior art ways" of updating images on a picture frame, distributing images over a network, configuring a network connection,

---

[17] The Court's prior Step 2 finding "that an issue of fact exists" as to the ordered combination of limitations, *Ceiva I*, Dkt. 48 at 12, rests on the *specification*'s assertion that "this specific arrangement was unconventional and adds an inventive element because the specific configuration allows content to be sent to the frame automatically, without user input enabling the delivery of images to a digital picture frame through a remote user interface." *Id*. The procedural posture of the case does not impact that specification support. Furthermore, Ceiva now has now provided detailed expert opinions supporting its position. *See supra* §II.

[18] Unlike in *Alice*, the claimed combinations in this case "purport to improve the functioning of the [display device] itself," and "effect an improvement in [networking technology]." *Alice*, 573 U.S. at 225; *see supra* §II; *Ceiva I*, Dkt. 48 at 12-13.

and controlling a client device. *Bascom*, 827 F.3d at 1349. At a minimum, a fact issue exists as to whether those elements individually or as part of an ordered combination were well-understood, routine, and conventional. *Berkheimer*, 881 F.3d at 1368-69; *see Amdocs infra* (noting industry applause and contemporaneous articles at Step 2).

Just as before, Amazon "glosses over the question of fact as to whether the combination of the frame, with components permitting remote delivery of data and software updates, is inventive." *Ceiva I*, Dkt. 48 at 13. Instead of taking on "its burden of showing that no issue of fact exists as to whether the *ordered combination* of limitations is unique or inventive," *id.* at 12, Amazon again resorts to arguments about whether "certain limitations from the Asserted Patents, divorced from the context of a virtual picture frame, were routine and well-known in the art." *Id.* As a slight variation on that approach, Amazon argues that certain limitations cannot supply an inventive concept or are non-inventive as a matter of law. Dkt. 78 at 12-13 (citing *ChargePoint*, *EscapeX*, *MyMail*, *IV Motorola*, *Prism Tech*, *IV AT&T*). Finally, Amazon resorts to making up a new requirement that "an ordered combination must yield an 'unexpected result.'" Dkt. 78 at 13-14 (citing *USR*).

Taking those arguments in order, Amazon asserts that "generic computer technology" and "purely functional" elements cannot supply an inventive concept. Dkt. 78 at 11 (citing *Alice*). However, Ceiva has presented contrary evidence disproving that the claimed combinations were revolutionary, pioneering, and ingenious, not generic technology.[19] In any event, legally, whether the elements are

---

[19] As discussed *supra* §II, the claims do not recite generic computer technology, and much of the hardware required specific configuration (*e.g.*, loading certain data into memory; programming specific functions; assembling hardware components, etc.). Contrary to Amazon's suggestion, *Alice* expressly affirms that "many computer-implemented claims are formally addressed to patent-eligible subject matter." *Alice*, at 224; *see also Enfish*, 822 F.3d at 1338 (much of "the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

"generic" or "functional" is not dispositive. *See, e.g., Amdocs (Israel) Limited v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) (the invention used "generic components, including network devices," but the "components operate[d] in an unconventional manner to achieve an improvement in computer functionality" due to "the invention's distributed architecture" and "generic" elements "working together in a distributed manner"; "invention was applauded by the industry"; "contemporaneous articles attributed [to] improved *** feature")); *Bascom*, 827 F.3d at 1348 (same). Furthermore, "the specification" ***does not*** "admit[] that the various computing and networking components recited in the claims were well-known, routine, and conventional at the time of the patents." Dkt. 78 at 11.[20] As detailed above, the specification identifies the prior art mechanisms and techniques used to display and transmit digital images, and then *points out the problems and limitations of each of them* upon which the patents purport to improve.

Next, *CosmoKey Sols. GmbH & Co. KG v. Duo Sec. LLC*, 15 F.4th 1091, 1099 (Fed. Cir. 2021) explains why Amazon's simplistic approach to the analysis—pointing to other cases to argue that certain elements or improvements are not inventive as a matter of law—is flawed and unworkable. *See, e.g.*, Dkt. 78 at 12-13. While "prior cases can be helpful in analyzing eligibility," the analysis of "whether *particular* claim *limitations* are abstract *or*, as *an ordered combination*, *involve an inventive concept* that transforms the claim into patent eligible subject matter, must be decided *on a case-by-case* basis in light of *the particular claim limitations, patent specification, and invention at issue*." *CosmoKey,* 15 F.4th at 1099 (emphasis added).

---

processes"; nothing justifies "an exclusion to patenting this large field of technological progress.").

[20] Amazon cites itself (a quote from Amazon's own brief) and its expert, Dr. Johnson, plus deposition testimony in footnote 9 about who first invented *hardware* elements such as a display, processor/controller, and memory. That is hardly the same as the specification *admitting* that *all the claim elements* were conventional.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

Amazon's cases generally confirm that *what the claims require* and *what the specification asserts to be* the improvements over the prior art *are what* the claims are *directed to*; and that if the claims are *directed to* an abstract idea, they must offer *something more* than "apply it on a computer." In Amazon's cases, the patents offer solutions to *business* problems (*e.g.*, record keeping, information processing, facilitating payments, etc.) without identifying any *technical* improvement over the prior art required to arrive at the *claimed* solution.[21] In *ChargePoint*, for example, the patents broadly claimed networked "charging stations for electric vehicles." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 763 (Fed. Cir. 2019).[22] The problem identified *by the specification* was the "lack of a communication network for these charging stations," which "limited the ability to efficiently operate them *from a business perspective*." *Id.* at 763. "[T]he specification never suggests that the charging station *itself* is improved from a technical perspective," or "that the invention involved overcoming some sort of *technical difficulty* in adding networking capability to the

---

[21] *See EscapeX IP LLC v. Block, Inc.*, 652 F.Supp.3d 396, 399 (S.D.N.Y. 2023) ("According to its specification, the patent seeks to remedy certain problems that currently exist with music streaming, including artists' inability to effectively monetize their music, their lack of control over content once users have downloaded it, and the disconnect between streaming services and artists' social media pages."); *MyMail, Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at *6-7 (Fed. Cir. Aug. 19, 2021) (unpublished opinion) (patent did not identify or solve a technical problem with the prior art; the patent owner's "bare and rote assertions that a claimed capability improves computer functionality" were ultimately unpersuasive at Step 1 and Step 2); *Intell. Ventures I, LLC v. Motorola Mobility LLC*, 81 F. Supp. 3d 356, 367 (D. Del. 2015) ("*IV Motorola*") (no "language in the claims or the specification demonstrating that the generic computer components function in an unconventional manner" or solved a technical problem in the prior art, the claims abstract); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016 (Fed. Cir. 2017) (unpublished decision *** the patent US 8,127,345 does not identify or solve a *technical* problem in the prior art); *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 235 F. Supp. 3d 577, 595 (D. Del. 2016) ("*IV AT&T*") (similar).

[22] The priority date in this case is in 1999, as compared to the late 2000s and early 2010s for the patents in *ChargePoint*.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

charging stations." *Id.* at 768. Thus, *ChargePoint's* only relevance here is that it *affirms* patent-eligibility of claims offering an improvement to the device itself or a networking problem. *See, e.g.*, *Packet Intelligence LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309–10 (Fed. Cir. 2020); *SRI*, 930 F.3d at 1303; *Google LLC v. EcoFactor, Inc.*, 602 F. Supp. 3d 1265, 1270 (N.D. Cal. 2022).

Finally, Amazon declares that a claimed combination must yield "unexpected results." Dkt. 78 at 13 (citing *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1357-58 (2021) ("*USR*")). *USR* creates no such rule. *USR* involved a method for credit card users to make purchases by providing a merchant a one-time code in lieu of their credit card number. 10 F.4th at 1348. It distinguished *Ancora*, because "the claimed invention identified a specific technique for addressing the vulnerability of license-authorization software to hacking in an *unexpected* way," but did not hold that "unexpected results" are required. *Id* at 1349-50. Such a rule would conflict with all the other authorities discussed above. Indeed, this analysis seems "similar to an obviousness analysis under 35 U.S.C. § 103, except lacking [actual references or] an explanation of a reason to combine the limitations as claimed," *Bascom*, 827 F.3d at 1350, relying instead on hindsight reasoning and circular logic.[23] Amazon ignores that (1) an inventive concept may arise in "in the ordered combination of the limitations,"

---

[23] Amazon's "piecemeal analysis" of hardware elements "fails to address the specific combination of these elements with their respective claimed properties or functionalities. Such ordered combinations were not well-understood, routine, or conventional in the 1999 time frame." Easttom Rebuttal ¶302; *see also id.* ¶303 ("If these technologies were ubiquitous and generic *** [Dr. Johnson] would have been able to find [at least one] prior art reference that contained them all."); *id.* ¶¶304-08 (rebutting conventionality assertions on specific elements); *id.* §XIII (addressing Dr. Johnson's obviousness arguments). Dr. Johnson improperly relies on hindsight reasoning and circular logic to assert the claimed combinations achieve nothing more than "expected" results. Dkt. 78 at 14 (*e.g.*, "to allow a user to provide images and preferences to the frame device remotely, the user must access a remote user interface to submit that information"; for "client-initiated communication," "the client device must request data before receiving it.").

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

*Bascom*, 827 F.3d at 1349; (2) it is Amazon's burden to prove that the "combination of elements is well-understood, routine and conventional," *Berkheimer*, 881 F.3d at 1368; (3) just because "something is disclosed in a piece of prior art … does not mean it was well-understood, routine, and conventional," *id.* at 1369; and (4) those are questions of fact Amazon must prove "by clear and convincing evidence." *Id.* at 1368-69. Substantial evidence rebuts Amazon's position on conventionality and demonstrates that the claimed combinations overcame technical problems, improved the functioning of the device itself, and effected other improvements in computer and networking technology that many viewed as innovative, pioneering, revolutionary, and anything but traditional. *See supra* §II.

## B. Amazon is not entitled to summary judgment on infringement.

The Court entered a scheduling order setting deadlines for the parties to present claim construction arguments for resolution. Dkt. 41. Amazon did not raise the alleged disclaimer of SSL or TLS as an issue for claim construction during the claim construction phase of the case. A claim construction argument that is not timely raised during the claim construction phase of the case is waived. *See Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007); *Kaneka Corp. v. Zhejiang Med. Co., Ltd.*, No. cv-11-02389 SJO (SHSx), 2018 WL 2718036, at *22 (C.D. Cal. Apr. 5, 2018) (an "argument is waived [when] not raised during the 'claim construction phase' of [the] case").[24] Prosecution history disclaimer is an issue requiring claim construction. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017); *see Mobile Equity Corp. v. Walmart Inc.*, No.

---

[24] In *Ceiva I*, the parties proposed five agreed constructions, while disputing whether other terms were governed by pre-AIA 35 U.S.C. § 112 ¶6 and indefinite. *Ceiva I*, Dkt. 97 at 5-8. The Court issued a claim construction order, adopting agreed constructions and rejecting Amazon's § 112 ¶6 indefiniteness arguments. *Id.* at 10. In this lawsuit, the parties stipulated to be bound by the Court's *Markman* Order in *Ceiva I* for previously-asserted patents, Dkt. 34, and the Court set a claim construction schedule for the newly-asserted '656 Patent. Dkt. 41. The parties agreed to a construction for one term of the '656 Patent, which the Court adopted. Dkts. 45, 47.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

2:21-cv-00126-JRG-RSP, 2022 WL 19917854, at *2 (E.D. Tex. Sept. 23, 2022) (excluding expert opinions on prosecution history argument not properly raised). Because Amazon failed to raise the alleged disclaimer during the claim construction phase of the case, it was waived and cannot be used to avoid infringement. *See Cent. Admixture*, 482 F.3d at 1356; *Kaneka*, 2018 WL 2718036, at 22.

Under Federal Rule of Civil Procedure 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). In determining whether there is good cause to modify a scheduling order, courts focus on the reasonable diligence of the moving party. *See Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007). A district court may modify the pretrial scheduling order only if the party seeking the amendment shows that the schedule "[could] not be reasonably met despite [the party's] diligence." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If that party was not diligent, the inquiry should end." *Id.* "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Id.* The Rule 16(b) good cause standard applies to scheduling order deadlines in patent cases.[25] Amazon has not even attempted to show good cause under Rule 16(b) to raise a new claim construction argument now after claim construction passed, fact discovery closed, and expert discovery closed. Indeed, any such attempt would be futile based on the record. Amazon had at least two opportunities to raise the alleged disclaimer argument during claim construction. Because Amazon was not diligent in raising the issue, the inquiry should end here.

---

[25] *See, e.g.*, *Mallinckrodt, Inc. v. Masimo Corp.*, 254 F. Supp. 2d 1140, 1156 (C.D. Cal. 2003) (untimely claim construction arguments); *see also SAGE Electrochromics Inc. v. View Inc.*, No. C-12-06441 JST (DMR), 2014 WL 1998049, at *2 (N.D. Cal. May 15, 2014) (untimely invalidity contentions); *Mass Engineered Design, Inc. v. Planar Sys., Inc.*, No. 3:16-CV-1510-SI, 2017 WL 11820360, at *5 (D. Or. Aug. 31, 2017) (untimely invalidity counterclaim); *GoDaddy.com, LLC v. RPost Communications Ltd.*, No. CV-14-00126-PHX-JAT, 2015 WL 6468370, at *1 (D. Ariz. Oct. 27, 2015) (untimely supplemental claim construction evidence).

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

Furthermore, for prosecution disclaimer to attach, "the disavowal must be both clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013).[26] In "seeking to invoke prosecution history disclaimer," Amazon "bears the burden of proving the existence of a 'clear and unmistakable' disclaimer." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016).

Viewing the prosecution history as a whole, *see, e.g.,* Ex. 14, Easttom Rebuttal ¶¶ 174-191, there has been no clear and unmistakable disclaimer. Ceiva's attorney did not purport to *characterize* the "authentication" function as covering *one* thing but not *another*—nor *explain how or why* the claimed authentication function *differed from some other* authentication function—nor propose limiting the meaning of authentication in any way. Rather, the attorney was *responding to* the examiner's assertion that *cited portions* of Guheen—a 325-page reference—disclosed an *authentication* function as claimed. The prosecuting attorney addressed the cited portions, explaining that they discussed *network encryption*, not *server authentication*. Given that *Guheen* was the reference at issue, and that the *cited portions* of Guheen did not disclose any authentication function, the attorney's statements should reasonably be viewed as making that point—*not* as a disavowal of claim scope. Though the attorney asserted, incorrectly, that SSL cannot be used for authentication (the SSL protocol includes optional steps for server authentication— just not in the cited portions of Guheen or in the SSL abstract cited by the attorney), he did not ***disclaim*** or purport to narrow the claim scope.[27]

---

[26] "Where the alleged disavowal is ambiguous, or even 'amenable to multiple reasonable interpretations,'" there is no "prosecution disclaimer." *Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) (quoting *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352, 1359 (Fed. Cir. 2003) and citing *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1325 (Fed. Cir. 2003) (noting consistent rejection of "statements too vague or ambiguous to qualify as a disavowal of claim scope.")).

[27] The comments were directed to Guheen's use of SSL for encryption, not authentication. They did not characterize the invention. *Guheen* was the reference cited by the examiner, not the SSL protocol. Ceiva never repeated the statement, and

1  In any event, Amazon's view that the statements clearly and unmistakably
2  distinguished and disclaimed the *claimed* "authentication" function from *not only*
3  **anything** disclosed in the SSL protocol, *but also* **anything** disclosed in the TLS
4  protocol (*i.e.*, a different protocol not even discussed in the prosecution history)—is
5  unsupported and wrong. The isolated statements do not even mention *TLS*. Thus,
6  Amazon has not met its burden of demonstrating a "clear and unmistakable"
7  disclaimer evident to one skilled in the art. *See Ecolab, Inc. v. FMC Corp.*, 569 F.3d
8  1335, 1342 (Fed. Cir. 2009) (erroneous statement never repeated or relied upon does
9  not result in disclaimer); *see also Malvern Panalytical Inc. v. TA Instruments-Waters
10  LLC*, 85 F.4th 1365, 1376 (Fed. Cir. 2023); *Mass. Inst. of Tech. v. Shire Pharms., Inc.*,
11  839 F.3d 1111, 1120-21 (Fed. Cir. 2016).

12  \* \* \*

13  Amazon's argument on the '656 Patent also fails because there is a triable issue of
14  fact on whether Amazon's products infringe the claims. The argument hinges on an
15  alleged "undisputed" fact that is, in fact, *hotly* contested. Ceiva has presented evidence
16  that each of the accused devices is configured to issue a request to the server system
17  (an HTTPS GET request) and receives both authentication information and image
18  data from the server system in response to the request, which satisfies the claim
19  requirements at issue. *See* Ex. 15, Edwards Report ¶¶261, 457, 468, 479; *see also id.*
20  ¶¶ 237, 263. Although Amazon's expert takes a different view, the experts' differing
21  opinions and explanations for whether the timing and sequence of the network
22  communications at issue satisfies the plain meaning of the claim language presents a
23  triable issue of fact for a jury to resolve.

24  **IV.   Conclusion**

25  Amazon's motion, in all parts, should be denied.

26  _____

27  the examiner never relied on the statement; instead, the examiner proposed an
   examiner amendment adding a software update limitation before allowing the claims.
28  The meaning of "authentication" was never limited, and TLS was never mentioned.

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

1    Dated: December 18, 2023          By: _/s/ Gary A. Hecker_____

2                                       Gary A. Hecker (CSB No. 099008)
                                        ghecker@munckwilson.com
3                                       **MUNCK WILSON MANDALA, LLP**
                                        1925 Century Park East, Suite 2300
4                                       Los Angeles, CA 90067
                                        Telephone: (310) 286-0377
5
                                        Michael C. Wilson (*Pro Hac Vice*)
6                                       mwilson@munckwilson.com
                                        S. Wallace Dunwoody (*Pro Hac Vice*)
7                                       wdunwoody@munckwilson.com
                                        Jordan C. Strauss (*Pro Hac Vice*)
8                                       jstrauss@munckwilson.com
                                        Jared M. Hoggan (*Pro Hac Vice*)
9                                       jhoggan@munckwilson.com
                                        Elliott C. Riches (*Pro Hac Vice*)
10                                      eriches@munckwilson.com
                                        **MUNCK WILSON MANDALA, LLP**
11                                      12770 Coit Road, Suite 600
                                        Dallas, TX 75251
12                                      Telephone: (972) 628-3600
                                        **Counsel for Plaintiff**
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on December 18, 2023 to all counsel of record via the Court's CM/ECF system.

By: _/s/ Gary A. Hecker_____
Gary A. Hecker

MUNCK WILSON MANDALA
1925 Century Park East, Suite 2300
Los Angeles, California 90067