UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No.: | 2:22-cv-02709-AB-MAA | Date: | March 4, 2024 |
|---|---|---|---|

| Title: | Ceiva Opco, LLC v. Amazon.com, Inc. |
|---|---|

| Present: The Honorable | **ANDRÉ BIROTTE JR., United States District Judge** |
|---|---|

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** **[In Chambers] ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101 AND NON-INFRINGEMENT (DKT. NO. 78); ORDER DENYING-AS-MOOT DEFENDANT'S MOTION TO STRIKE (DKT. NO. 95); ORDER DENYING-AS-MOOT DEFENDANT'S MOTION TO EXCLUDE THE EXPERT OPINION AND TESTIMONY OF JAMES MALACKOWSKI (DKT NO. 71); ORDER DENYING-AS-MOOT MOTION TO EXCLUDE DR. JOHNSON'S OPINIONS (DKT. NO. 76)**

Defendant Amazon.com, Inc. ("Amazon" or "Defendant") moves for summary judgment of invalidity under 35 U.S.C. § 101 and non-infringement. ("MSJ," Dkt. No. 78.) Plaintiff Ceiva Opco, LLC ("Ceiva" or "Plaintiff") filed an opposition ("Opp.," Dkt. No. 99), and Defendant filed a reply ("Reply," Dkt. No. 121.) Relatedly, Defendant filed a motion to strike Plaintiff's new infringement theories and untimely disclosure of expert opinions (Dkt. No. 96) and motions to exclude the opinions and testimony of Mr. Malackowski and Dr. Johnson (Dkt. Nos. 71 and 76.)

The Court held a hearing on January 12, 2024. After considering the parties' arguments, the Court **GRANTS** Defendant's motion for summary judgment. The other three motions are **MOOT** in view of the summary judgment ruling.

## I.      BACKGROUND

### A. The Asserted Patents

In this patent infringement action, Plaintiff alleges that Defendant infringes U.S. Patent Nos. 6,442,573 ("'573 Patent"), 9,203,930 ("'930 Patent"), 9,654,562 ("'562 Patent"), and 9,124,656 ("'656 Patent") (collectively, the "Asserted Patents"). (*See generally*, "FAC," Dkt. No. 28.) The Asserted Patents are related, share the same inventors, and share a common specification. (*Id.* ¶ 63.) The '573, '930, and '656 Patents, each titled "Method and Apparatus for Distributing Picture Mail to a Frame Device Community," issued on August 27, 2002, December 1, 2015, and September 1, 2015, respectively. (*See* '573 Patent; '930 Patent; '656 Patent.) The '562 Patent, titled "Method and Apparatus for Distributing Content Via a Communications Network," issued on May 16, 2017. ('562 Patent.)

At a high level, the Asserted Patents are directed to displaying images on a digital picture frame. ('573 patent at 6:31-41; *see* 1:45-2:14, Fig. 1.) In the prior art both traditional frames and digital frames required users to be in close proximity to the frame to add new photos. (*Id.* at 1:19-34, 2:15-17.) The specification discloses "interconnected frame devices" having display regions surrounded by aesthetically pleasing frames. (*Id.*, Abstract) To solve the proximity problem, the frame devices are "configured to connect to an interconnection fabric to periodically obtain image data according to criteria established by an authorized user. The data repository is populated with image data via the image collection process." (*Id.*)

Claim 19 of the '573 Patent discloses:

19. A system for distributing image data comprising:

at least one digital picture frame comprising memory and operating system software located inside said digital picture frame configured to operate according to preferences defined by a user, said at least one digital picture frame comprising a border region modeled to resemble a picture frame designed to circumscribe printed photographs;

a user interface coupled to at least one server system via a network wherein said user interface is physically separable from said at

least one digital picture frame and configured to obtain image data and said preferences from said user and provide said image data and said preferences to said at least one server system;

said at least one server system coupled to said at least one digital picture frame via said network, wherein said at least one server system is configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system.

('573 Patent, Claim 19.)

Claim 1 of the '562 Patent discloses:

1. An apparatus for displaying content comprising image data received from a server system via a communications network on a display screen comprising:

said display screen;

a central processing unit;

a video controller configured to control display of said content on said display screen;

a communications interface configured to communicate with said server system via said communications network;

a memory comprising a unique identifier for said apparatus, computer readable instructions different from said content for controlling the operation of said apparatus, and

a version identifier for said computer readable instructions, said computer readable instructions comprising instructions for causing said apparatus to perform the steps of:

upon connection to a power source and a communications source, initiating by said apparatus a communications session with said server system via said communications network;

sending by said apparatus said unique identifier to said server system;

sending by said apparatus said version identifier to said server system;

prompting by said apparatus a user of said apparatus to create an
account at said server system;

receiving by said apparatus updated computer readable
instructions for controlling the operation of said apparatus
from said server system;

updating by said apparatus said computer readable instructions
in said memory with said updated computer readable
instructions;

receiving by said apparatus updated content from said server
system;

displaying by said apparatus said updated content on said display
screen.

('562 Patent, Claim 1.)

Claim 1 of the '930 Patent discloses:

1. A digital display apparatus having an integrated housing,
said integrated housing comprising:

an image display region on an outside surface of said integrated
housing;

a memory in an inside of said integrated housing, said memory
comprising a plurality of image data files, security information
comprising authentication information for a first remote server
system and a unique identifier for said digital display apparatus,
and a current version of onboard software;

a processor configured to control the display of image data from said
plurality of image data files in said image display region in
accordance with said onboard software in said inside of said
integrated housing;

communication circuitry configured to engage a network medium in
said inside of said integrated housing under the control of said
processor;

wherein said onboard software comprises:

an image display function configured to obtain image data from
said plurality of image data files in said memory for
rendering in said image display region[;]

a remote connection function configured to automatically initiate
communications with said first remote server system
across said network medium, said remote connection

function further configured to send a request for image data to said first remote server system after initiating said communications and to receive in response to said request for image data a set of data from said first remote server system comprising one or more image data files;

an authentication function configured to authenticate said first remote server system prior to accepting said set of data from said first remote server system;

software update function configured to obtain an updated version of said onboard software from said server and to replace said current version of said onboard software in said memory with said updated version.

('930 Patent, Claim 1.)

Claim 1 of the '656 Patent discloses:

1. A display device for displaying image data received from a server system comprising:

a central processing unit;

a display screen for displaying said image data;

a communications interface configured to communicate via a communications network;

a memory comprising computer readable instructions for controlling the operation of said display device, said computer readable instructions for controlling the operation of said display device comprising instructions for causing said display device, upon connection to a power source and a communications source and prior to receiving any input from a user, to automatically initiate a communications session with said server system, said communications session comprising the steps of:

sending a request for image data to said server system via said communications network;

receiving image data and authentication information from said server system in response to said request;

authenticating said server system;

storing said received image data in said memory;

displaying said image data on said display screen;

receiving updated computer readable instructions for controlling the operation of said display device from said server system via said communications network;

automatically updating said computer readable instructions for controlling the operation of said display device with said updated computer readable instructions for controlling the operation of said display device;

said computer readable instructions for controlling the operation of said display device further comprising instructions for causing said display device to instruct said server system to create an interface accessible by a web browser for managing behavior characteristics of said display device.

('656 Patent, Claim 1.)

### B. Related Proceeding

The Court previously addressed the eligibility of the '573, '930, and '562 Patents under 35 U.S.C. § 101 in a related action. *See Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-09129-AB-MAA ("*Ceiva Logic*"), Docket No. 48. The Court analyzed the patents under the two-part *Alice* framework. *Id.* at 8–13. Under Step One, the Court described the claims at issue as likely directed to the abstract idea of a digital frame automatically accessing a remote data repository to obtain updated content with the use of a computer and without any further user input." *Id.* at 9. Specifically, the Court described this idea as comparable to "compiling photos to a display in succession, such as on a film projector." *Id.* at 10. The Court also reasoned that these patents lacked sufficient specificity to be directed to an improvement in computer functionality. *Id.* Still, the Court declined to reach a final determination on Step One. *Id.*

Under Step Two, the Court found an issue of fact as to whether the ordered combination of the limitations in the Asserted Patents disclosed an inventive concept. *Id.* at 12. Specifically, the Court found that Plaintiff identified a specific configuration of limitations, including "a unique identifier stored in memory, a frame that initiates communications with the server, and a server that automatically distributes updated content to the frame." *Id.* (citing '562 Patent, Claim 1; '930 Patent, Claim 1; '573 Patent, Claim 19). The Court found statements in the specification suggested that this configuration was unconventional. *Id.* (citing '573

Patent at 2:15-16 and 2:23-25).[1] These portions of the specification discuss problems in the prior art. Amazon never renewed its motion to dismiss under § 101 because the case was resolved on other grounds. *See* Dkt. No. 206 in Case No. 2:19-cv-09129. Because the Court did not previously make a final eligibility determination, the Court reapplies the *Alice* framework here. Still, the statements in *Ceiva Logic* remain relevant and helpful. Additionally, the Court extends the § 101 analysis to the '656 Patent, which was not at issue in *Ceiva Logic*.

## II.   LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A fact is material when, under the governing law, the resolution of that fact might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex*, 477 U.S. at 322–23, and the court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007).

To meet its burden, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). There is no genuine issue for trial where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* at 587.

---

[1] The Court also pointed to allegations in the first amended complaint. However, the allegations in the instant litigation are not necessarily the same. Moreover, the instant motion is a motion for summary judgment; pleadings alone are insufficient to avoid an invalidity finding.

## B. Invalidity under 35 U.S.C. § 101

To obtain summary judgment of invalidity, a moving party must overcome the statutory presumption that issued patent claims are valid. *See* 35 U.S.C. § 282. That statute mandates that "[a] patent shall be presumed valid" and that "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id*. Thus, a party seeking to overcome the statutory presumption and to establish the invalidity of an issued patent claim must prove the invalidity by clear and convincing evidence. *See Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 112 (2011).

Under §101, Congress granted broad patent eligibility to inventions or discoveries including "processes, machines, manufactures, and compositions of matter." *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010). These broad categories notwithstanding, the Supreme Court has carved out three exceptions to patent eligibility under § 101: "'laws of nature, physical phenomena, and abstract ideas.'" *Id*. (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)). The last exception, abstract ideas, is relevant here.

"[A]n invention is not rendered ineligible for patent simply because it involves an abstract concept. Applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (asking whether the invention "claim[s] the 'buildin[g] block[s]' of human ingenuity" or "integrate[s] the building blocks into something more"). In *Alice*, the Supreme Court set forth a two-step framework for determining patent eligibility under § 101. A claim is ineligible under section 101 if "(1) it is 'directed to' a patent-ineligible concept, i.e., a law of nature, natural phenomenon, or abstract idea, and (2), if so, the particular elements of the claim, considered 'both individually and as an ordered combination,' do not add enough to 'transform the nature of the claim' into a patent-eligible application.'" *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quoting *Alice*, 573 U.S. at 217 (internal quotations omitted)).

Patent eligibility is a question of law that may include underlying questions of fact. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) ("While the ultimate determination of eligibility under § 101 is a question of law, like many legal questions, there can be subsidiary fact questions which must be resolved en route to the ultimate legal determination."); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

Under step one, "courts may ask whether the claims 'focus on a specific means or method that improves the relevant technology' or are 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Nagravision SA v. NFL Enterprises, LLC*, No. CV 17-03919 AB (SKx), 2018 WL 1807285, at *3 (C.D. Cal. Mar. 9, 2018) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). In the software context, this step often "turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies as an abstract idea for which computers are invoked merely as a tool." *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020) (quotation marks omitted).

If the claims fail step one, under step two, "the court must search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Timeplay, Inc. v. Audience Entm't LLC*, No. CV 15-05202 SJO (JCx), 2015 WL 9695321, at *3 (C.D. Cal. Nov. 10, 2015). This step is satisfied when the claim limitations "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014). "Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact." *Aatrix Software*, 882 F.3d at 1128.

## III.   DISCUSSION

### A. Invalidity under § 101

#### i.   Representativeness

For the reasons explained below, the Court finds claim 19 of the '573 Patent, claim 1 of the '930 Patent, claim 16 of the '562 Patent, and claim 1 of the '656 Patent representative. Defendant explains that the Court's Order in *Ceiva Logic* found claim 19 of the '573 patent, claim 1 of the '930 patent, and claim 1 of the '562 patent representative. Mot. at 9. Plaintiff agrees that claim 19 of the '573 Patent is representative. Opp. at 20. Plaintiff contends that claim 3 of the '930 Patent, claim 16 of the '562 Patent, and claim 5 of the '656 Patent are representative. *Id.*

Claim 3 of the '930 Patent depends from claim 2 which depends from claim 1. Claim 3 adds the additional limitation, "wherein said authentication function is further configured to provide device authentication to said first remote server system

prior to obtaining image data from said remote server system." '930 Patent, Claim 3. This dependent limitation specifies a means of authentication (providing device information) and a type of data (image data). It does not introduce limitations changing the character of claim 1. Accordingly, the Court finds claim 1 representative for purposes of the *Alice* analysis. *See Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) ("The district court, however, correctly determined that addressing each claim of the asserted patents was unnecessary" where claim 1 was "representative" because "all the claims are substantially similar and linked to the same abstract idea.")

Claim 16 of the '562 Patent depends from claim 1 and adds the additional limitation, "wherein said computer readable instructions comprise instructions for causing said apparatus to transmit authentication information to said server system." '562 Patent, Claim 16. Thus, the Court finds claim 16, including all of the limitations of independent claim 1 from which it depends, representative. Claim 1, alone, is not necessarily representative as it does not include the idea of "authentication."

Claim 5 of the '656 Patent depends from claim 1 and adds the additional limitation, "wherein said memory further comprises preference information for controlling the display of said image data by said display device." '656 Patent, Claim 1. This dependent limitation specifies a type of user input (preference information). It does not introduce limitations changing the character of claim 1. Accordingly, the Court finds claim 1 representative for purposes of the *Alice* analysis. *See Content Extraction & Transmission LLC*, 776 F.3d at 1348.

ii.   *Alice* Step One

1.   Representativeness

As a threshold matter, the fact that the representative claims are directed to display devices, apparatuses, or systems, does not end the eligibility inquiry. Claims reciting physical components are invalid if they "merely provide a generic environment in which to carry out the abstract idea." *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (finding claim reciting "a telephone unit" invalid because the telephone unit merely provided a generic environment for "classifying and storing digital images in an organized manner.")

Here, the representative claims follow a similar pattern. For instance, claim 19 of the '573 Patent recites a "digital picture frame . . . configured to operate according to preferences defined by a user," "a user interface . . . configured to obtain

image data and said preferences from said user and provide said image data and said preferences to said at least one server system," and a "server system . . . configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from said at least one server system." '573 Patent, Claim 19. As in *TLI*, the physical components – a digital picture frame, a user interface, and a server system – are generic environments. The eligibility analysis focuses on the functions these generic environments are configured to carry out. To the extent these functions are abstract ideas, recitation of the generic physical components cannot save the claims. *See* 823 F.3d at 611.

The '930, '562, and '656 Patents disclose similarly generic environments such as a display apparatus, a processor, a communications interface, and a memory. Thus, as with the '573 Patent, discussed above, the eligibility analysis focuses on the functions these generic environments are configured to carry out. Recitation of the physical components does not end the inquiry.

## 2.   The Character of the Claims

Next, the Court assesses the character of the claims. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). The Court must determine whether claim 1 is "directed to an improvement" in the relevant technical field or "directed to an abstract idea." 823 F.3d at 612 (citing *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Claimed processes that can be "performed in the human mind, or by a human using a pen and paper" are directed to abstract ideas. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).

In *Ceiva Logic*, the Court described the '573, '930, and '562 Patents as directed to "automatically accessing a remote data repository to obtain updated content without the use of a computer and without any further user input," within the context of a digital picture frame. *Ceiva Logic, Inc. v. Amazon.com, Inc.*, No. 2:19-cv-09129-AB-MAA, Docket No. 48 at 9. For the following reasons that description remains applicable and also applies to the '656 Patent.

Claim 19 of the '573 Patent recites generic physical components, as described above. *See* § III.A.i, *supra*. The claimed digital frame is "configured to operate according to preferences defined by a user." '573 Patent, Claim 1. A user interface

is "configured to obtain image data and said preferences from said user and provide said image data and said preferences to" a server. *Id.* The server is "configured to periodically relay said image data and said preferences to said at least one digital picture frame when said at least one digital picture frame automatically issues a request for said image data and wherein said at least one digital picture frame is configured to obtain an update for said operating system software from" the server. *Id.* The functions are consistent with the Court's prior description.

Claim 1 of the '562 Patent also recites generic physical components including a display apparatus, a display screen, a processor, a controller, a communications interface, a memory, and software. '562 Patent, Claim 1. The software initiates a communications session with the server over a network, sends and receives information sufficient to identify the display apparatus, updates the display apparatus with the necessary software, receives updated content from the display apparatus, and then uses the display apparatus to display the updated content. *Id.* The claimed software functionalities are consistent with the Court's prior description.

Claim 1 of the '930 Patent recites similar generic physical components. '930 Patent, Claim 1. The claimed software includes an image display function configured to obtain image data, a remote connection function, configured to facilitate communication over a network such that a remote server may request and receive updated image data, an authentication function configured to authenticate the server before accepting updated image data, and a software update function configured to update software on the display device. *Id.* The claimed software functionalities are consistent with the Court's prior description, but also include authentication in addition to remote access.

Claim 1 of the '656 Patent recites similar generic physical components. '656 Patent, Claim 1. These components initiate a communications session which involves sending a request for image data to a server, receiving image data and authentication information from the server, storing the received image data, displaying the received image data, and updating software to perform these functions.

These functions are abstract. Claims directed to sending and receiving data are not patent eligible. *See Affinity Labs of Texas, LLC v. DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (finding claims directed to "the conveyance and manipulation of information using wireless technology" via tangible yet conventional components invalid); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315 (Fed. Cir. 2019) (finding claims directed to "capturing and transmitting data

from one device to another" abstract at Step One). Claims directed to remote
authentication and remote software updates are likewise not eligible. *See MyMail,
Ltd. v. ooVoo, LLC*, No. 2020-1825, 2021 WL 3671364, at *5 (Fed. Cir. Aug. 19,
2021) (finding claim directed to "updating toolbar software over a network without
user intervention" invalid); *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310,
1315 (Fed. Cir. 2021) (finding claims directed to "use of an algorithm-generated
content-based identifier to perform the claimed data-management function" invalid);
*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1181
(Fed. Cir. 2020) (finding authentication function added to claim abstract); *Bridge &
Post, Inc. v. Verizon Commc'ns, Inc.*, 778 F. App'x 882, 889 (Fed. Cir. 2019)
(finding claim directed to "communicating information using a personalized
marking" abstract).

### 3. The Claims Are Not Directed to an Improvement

Third, the Court finds the claims are not directed to an improvement in
computer and networking technology. Plaintiff argues the representative claims
"improve the performance and functionality of a digital display device" by "enabling
it to 'dynamically obtain image data from a networked data source and then display
that data according to criteria established by an authorized user.'" Opp. at 29–30
(quoting '573 Patent at 1:50–53). Plaintiff argues the claimed invention solves a
problem in the prior art because it allows users to remotely update or modify image
data for display. *Id.* Though the Court agrees the '573 Patent specification discusses
the remote access problem in the prior art, the eligibility inquiry focuses on the
claims of the asserted patents.

Here, the claims of the asserted patents are aspirational. They are directed to
a desired result but, beyond identification of generic computer components, do not
claim any specific way to achieve that result. Plaintiff argues that specific
combinations of elements come together to provide a technological improvement
but the claims do not support this argument. *See* Opp. at 29, n.14. For instance, the
'573 Patent discloses "[a] user interface . . . configured to obtain image data and said
preferences from said user and provide said image data and said preferences to" a
server. '573 Patent, Claim 19. A generic user interface performing a generic function
is not an improvement. *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d
1266, 1269-71 (Fed. Cir. 2016). Neither is communication between the user
interface and server or other components. *See, e.g., Credit Acceptance Corp. v.
Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017). Moreover, the claim
discloses only that the user interface is "configured" to achieve a result. This type of
results-based claiming does not constitute an improvement. *See Affinity Labs*, 838

F.3d 1253, 1258–59; *see also Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (Claims must "sufficiently describe how to achieve [the solution] in a non-abstract way.").

Similarly, Plaintiff points to both the "unique memory ID" and the "version identifier" of claim 1 of the '562 Patent but the claim does not explain how to generate or use these identifiers, along with the other claimed components, to perform any sort of remote authentication or software update. *See Secured Mail Solutions LLC v. Univ. Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017) (finding limitation abstract where "[t]here is no description of how the unique identifier is generated . . . . Rather, the claim language cited by [plaintiff] merely recites that the unique identifier is generated by the sender"); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 2019-1765, 2020 WL 3400682, at *3 (Fed. Cir. June 19, 2020) (affirming claimed advance over prior art was a "functional abstraction" where the specification treated an element of the claimed invention as "a black box").[2]

To compare, claims found to provide improvements include a greater level of specificity regarding both the claimed hardware and software components, and how the claimed components or steps come together to provide a solution. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 908 (Fed. Cir. 2022), *cert. denied*, 2023 WL 3696138 (U.S. May 30, 2023) (finding that a claim directed to "specific, hardware-based RFID serial number data structure designed to enable technological improvements" was non-abstract); *see also Packet Intel. LLC v. NetScout Sys., Inc.*, 965 F.3d 1299, 1309 (Fed. Cir. 2020) (finding claims purporting to solve computer network challenge to be valid where "[t]he claims detail how [the solution] is achieved in several steps").

In its Step One discussion (Opp. at 25–30), Plaintiff does not identify any specific evidence it contends raises a triable issue of fact. Accordingly, the Court makes an eligibility determination as a matter of law. For the foregoing reasons, the representative claims are directed to the abstract idea of automatically accessing a remote data repository to obtain updated content without the use of a computer and

---

[2] Plaintiffs also argues the "self-configuring plug and play set up" constitutes the improvement. The Court finds this description amounts to a desired result but, again, the claim elements do not explain how to achieve this result with specificity. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) ("Essentially, the claims are directed to certain functionality—here, the ability to generate menus with certain features. Alternatively, the claims are not directed to a specific improvement in the way computers operate.")

without any further user input, and performing related functions including remote authentication and remote software updates.

### iii.  *Alice* Step Two

Where a claim is directed to an abstract idea, the claim must include additional features to ensure that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (citations omitted). In evaluating Step Two, the Court considers whether the claim limitations, either individually or as an ordered combination, teach implementing the abstract idea using something more than well-understood, routine, or conventional techniques. *See Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). When there is no genuine issue of material fact regarding whether the claim element or claimed combination is well-understood, routine, conventional to a skilled artisan in the relevant field, this issue can be decided on summary judgment as a matter of law. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

As a threshold matter, the Court did not already find that a specific configuration of components is the inventive concept here. *See* Opp. at 32. Rather, based on the operative pleadings in *Ceiva Logic*, the Court declined to find the patents invalid due to a ***potential*** fact issue as to whether the specific of configuration of components provided an inventive concept. The pleadings in *Ceiva Logic* are not controlling here, both because that was a different case and because this is a summary judgment ruling and must consider facts, as opposed to allegations.

Next, Plaintiff's opposition focuses entirely on the *Ceiva Logic* issue – whether the claimed configuration of elements constitutes an inventive concept. Plaintiff does not rebut Defendant's arguments regarding the genericness of the claimed physical components. Accordingly, the Court finds the representative claims directed to generic components performing the claimed functions. The only remaining question is whether the sum of those generic components amounts to something more than the abstract idea discussed above. For the reasons stated below, the Court finds it does not.

In support of its position, Plaintiff relies on Dr. Easttom's testimony (1) discussing industry praise of a commercial embodiment of the Asserted Patents and (2) interpreting the claim language of the Asserted Patents.

### 1.  The Industry Praise Does Not Create a Fact Issue

Plaintiff begins by discussing several media statements regarding the commercial embodiment of the claimed invention. *See* Opp. at 19 (citing ECF Nos. 99-3–99-15). Generally, the commercial embodiment of an asserted patent is not the same as the patent itself. Thus, absent some argument tying the claim language to the commercial embodiment, this type of evidence is not probative. Here, Plaintiff insists its expert witness, Dr. Easttom, relies upon sufficient evidence tying the asserted claims to the commercial embodiment. *See, e.g.*, Easttom Rebuttal Report, ECF No. 99-16 ("Easttom Report") ¶¶ 465, 479. The Court need not assess this argument, however, because the industry praise evidence suffers from other defects.

The industry praise evidence includes broad accolades regarding the idea of enabling remote upload of new images to a digital frame. *See* Opp. at 19–20; *see also* Easttom Report ¶¶ 479–515. However, again, Plaintiff does not explain how these statements relate to any particular claim element or ordered combination of elements. Rather, following a general discussion of the industry praise, Dr. Easttom reproduces, verbatim, claim language he contends the praise addresses. *Id.* ¶ 514. He then concludes all of these features "impressed the industry." *Id.* ¶ 515. He offers no opinions regarding how any particular piece of industry praise relates to any particular claim element. Absent this kind of discussion focused on specific claim elements, the industry praise evidence is insufficient to create a fact issue as to unconventionality under step two. Moreover, a review of the cited evidence shows it broadly praises the idea of remote upload of new images to a digital frame. The abstract idea cannot provide the inventive concept. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018).

## 2. Dr. Easttom's Other Opinions Do Not Create a Fact Issue

Most of Dr. Easttom's opinions address all of the asserted claims and elements together, with reference to high level concepts as opposed to specific claim language. These opinions do not create a fact issue. Dr. Easttom opines that, at the time of the invention, "it was not routine, conventional, or well-known to have a digital frame device that could be remotely controlled and updated." Easttom Report ¶ 286. However, the above statement confirms that the abstract idea – remotely controlling and updating a digital frame – was unconventional, not that any particular claim element was unconventional. This is insufficient to survive Alice Step Two. *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331–32 (Fed. Cir. 2017) ("Without an explanation of the mechanism for how the result is accomplished, this purported feature of the invention cannot supply an inventive concept.") (internal quotations and citations omitted); *see also BSG Tech LLC*, 899 F.3d at 1290 (the

ineligible concept "cannot supply the inventive concept"); *see also Sanderling Mgmt. Ltd. v. Snap Inc.*, 65 F.4th 698, 706 (Fed. Cir. 2023).

The portions of Dr. Easttom's report identifying purportedly unconventional features with greater specificity still fail to establish unconventionality. Dr. Easttom identifies the allegedly unconventional features as "easy setup/configuration," "separable user interface to provide photos so non-tech savvy users do not have to figure out how to provide photos," and "automatic image retrieval." Easttom Report ¶ 514. At a high level, none of these features transform the claims.

Easy setup / configuration, itself, is not an inventive concept present in the claim language. Rather, it is a desired benefit of the claimed systems and methods. *See, e.g.*, *Eolas Techs. Inc. v. Amazon.com, Inc.*, No. 2022-1932, 2024 WL 371959, at *6 (Fed. Cir. Feb. 1, 2024) (finding claims ineligible where they "merely describe[d] a desired function or outcome without providing details of the claimed [] process). In order to prevail under Step Two, the patentee must identify inventive concepts in the claim itself. *See Mayo Collaborative Servs.*, 566 U.S. 66, 72–73 (2012). A "user interface," without more, is a conventional computer component. *See W. View Rsch., LLC v. Audi AG*, 685 F. App'x 923, 927 (Fed. Cir. 2017). The idea of having it separate from the frame itself does not render the entire claim inventive. Automatic image retrieval is also a result or desired outcome. *See Eloas Techs. Inc.*, 2024 WL 371959 at *6.

Plaintiff's emphasis on the combination of these three features does not change the analysis. First, the step two analysis typically considers whether a particular, *ordered* combination transforms the claim. *See In re TLI Commc'ns*, 823 F.3d at 611. Here, there is no explanation as to why the specific order is important in a way that renders the claim unconventional. For instance, even in the context of a traditional picture frame displaying physical photos, a user would first need to select a frame, decide which photo(s) to display in the frame, put the photo(s) into the frame, and update the displayed photo(s) in the future by adding new photos. Here, uploading photos using a user interface, first, and then allowing automatic display and updates in the future does not present any unconventionality as to the order. It simply automates a known process.

Further, even if it were appropriate to consider the combination, absent any specific focus on the order, the identified combination is not patent eligible. The process of adding photos to a picture frame and changing the display photo can be accomplished manually. Many people stack photos behind the glass in traditional photo frames, memorializing updates through the years and allowing for easy

updates to the display photo or photos. Here, the asserted claims disclose this same process only digitally and partially automatically.[3]  The components that allow a user to perform this known method in a digital and automatic way, including the digital picture frame, user interface, server, and various identifiers, are conventional. *See, e.g.*, '573 Patent at 1:46-2:14 (describing digital frames in the prior art). Thus, what is claimed here, is a non-specific way to perform a known process digitally and automatically. Such claiming does not confer subject matter eligibility. *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. 2022-1861, 2024 WL 89642, at *3 (Fed. Cir. Jan. 9, 2024) (quoting *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1365 (Fed. Cir. 2020)) ("[I]improving a user's experience while using a computer application is not, without more, sufficient to render the claims" eligible.)

At a claim-specific level, Dr. Easttom's opinions also fail to provide sufficient evidence of unconventionality.

a.  The '573 Patent

Dr. Easttom, opines that it "was unconventional and novel" for "a picture frame to be networked" and "configured to automatically receive and display images from a remote user." Easttom Rebuttal Report ¶ 305. This testimony does not create a fact issue at Step Two. The ineligible concept cannot supply the inventive concept. *See BSG Tech*, 899 F.3d at 1290. Here, Dr. Easttom does not analyze specific claim limitations. Rather, he opines that the idea of a networked picture frame that can be set up to automatically display photos uploaded remotely is novel and unconventional. This may be true but it does not establish subject matter eligibility because it is directed to a result or desired outcome instead of a specific way to accomplish that outcome.

Dr. Easttom then goes on to identify several claim elements he contends are unconventional. These include "a remote user interface . . . physically remote from the device," "coupling the server system with the frame via a communications network" and "authenticating the server before storing image data." Easttom Report ¶ 312. Per Dr. Easttom, these features offer certain advantages including allowing a non-tech savvy user to use the frame device, allowing automatic remote photo uploads and software updates, and ensuring data security.

These three features do not amount to inventive concepts. First, each relies only on generic computer components. User interfaces and communications

---

3      The user must still select and add photos to display using the user interface.

networks are generic computer components. Leveraging these generic components to accomplish a particular goal does not transform a claim in a way that makes it subject matter eligible. Authentication is also an idea, not an inventive concept. Claim 19, which the parties agree is representative of the claims of the '573 Patent is not directed to authentication in any event.

Dr. Easttom also details problems in the prior art regarding data pull and push. Easttom Report ¶¶ 292 and 293. While this testimony potentially highlights a need for systems and methods that can overcome these problems, the claims themselves are not directed to a specific way to solve the problems.

### b.  The '930 Patent

Dr. Easttom criticizes Amazon's expert witness, Dr. Johnson, for failing to provide evidence that "conventional software that was usable in a digital display device would comprise the combined ability to display images from files in memory on a display, automatically initiate a remote connection to a server system across a network to request image data and software updates, create a secure communication by authenticating the server system before accepting the data, and then download image data and software and update its software in memory." Easttom Report ¶ 304. Again, however, these features rely on "conventional software" per Dr. Easttom's own admission. Moreover, in identifying purportedly inventive features, Dr. Easttom again discusses only desired capabilities of the device, which are not eligible subject matter.

Dr. Easttom discusses these desired results at length, again repeatedly using the terminology, "the ability to . . . ." *See e.g.*, Easttom Report ¶ 309; *see also* ¶ 141 (characterizing claim language using largely functional language). This type of disclosure does not provide sufficient evidence that the discussed features are patentable. Dr. Easttom also largely repeats or paraphrases the claim language in totality, as opposed to focusing on specific, inventive features, and then concludes that the recited limitations or combination of limitations is unconventional. This is not sufficient.

### c.  The '562 Patent

Plaintiff points to Dr. Easttom's report at ¶¶ 149, 307, and 310 in support of its position that claimed features of the '562 Patent are unconventional. This testimony suffers from the same defects discussed above with the respect to both the

'573 and '930 Patents. Thus, for the reasons stated above, the Court does not find this evidence sufficient to raise a triable issue of fact as to unconventionality.

### d.  The '656 Patent

Dr. Easttom criticizes Dr. Johnson's opinions and characterizes the claim limitations consistent with his testimony, discussed above, concerning the other asserted patents. Dr. Easttom also specifically opines that "the user interface itself is a customized webpage programmed with the claimed functionality, namely 'for managing behavior characteristics of said display device.'" Easttom Report ¶ 308. The Court appreciates that the user interface, as characterized by Dr. Easttom, is not necessarily the same as a 1999 webpage. Nevertheless, Plaintiff does not contend that user interfaces themselves were unconventional at the time of the '656 Patent. In view of the claims, it is the programming that, per Plaintiff, renders the user interface unconventional. However, Dr. Easttom and the claim itself describe this programming in only functional language – i.e., the user interface is "for managing behavior characteristics of said display device." '656 Patent, Claim 1. The claim includes no further detail as to how the user interface accomplishes this purpose. Thus, consistent with the above discussion, the claim does not disclose eligible subject matter. Dr. Easttom's testimony at ¶¶ 145 and 311 parallels other testimony discuss above and fails to create a fact issue as to unconventionality for the same reasons discussed above.

* * *

For the foregoing reasons, the Court does not find any fact issue as to whether a specific claim element or combination of elements was well-understood, routine, or conventional. The representative claims do not include any inventive concepts under Step Two.

In sum, the Court finds the Asserted Patents invalid under 35 U.S.C. § 101. No disputes of material fact prevent this finding. Within seven days of the issuance of this Order, Defendant shall submit a proposed judgment consistent with this Order, stating whether Plaintiff has agreed to its form. If Plaintiff does not agree to the form of the proposed judgment, it shall file any objections within seven days of its lodgment and in a manner consistent with the Local Rules.

## B.  Non-infringement

Because the Court finds no issue of material fact exists as to whether the

Asserted Patents are invalid under § 101, the Court need not address infringement.

## IV.    Remaining Motions

### A. Defendant's Motion to Strike New Infringement Theories and Undisclosed Expert Opinions and Testimony (Dkt. No. 95)

Defendant's motion to strike pertains only to Plaintiff's infringement theories. (*See generally*, Dkt. No. 95.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

### B. Defendant's Motion to Exclude Opinions and Testimony of Mr. Malackowski (Dkt. No. 71)

Defendant's motion to exclude pertains to Mr. Malackowski's opinions on damages. (*See generally*, Dkt. No. 71.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

### C. Defendant's Motion to Exclude Opinions and Testimony of Dr. Johnson (Dkt. No. 76)

Defendant's motion to strike pertains only to Dr. Johnson's infringement opinions on infringement. (*See generally*, Dkt. No. 76.) In view of the invalidity finding, discussed above, the motion is **MOOT**.

## V.    CONCLUSION

For the foregoing reasons, the Court rules as follows:

- **GRANTS** Defendant's Motion for Summary Judgment (Dkt. No. 78);
- **DENIES-AS-MOOT** Defendant's Motion to Strike (Dkt. No. 95);
- **DENIES-AS-MOOT** Defendant's Motion to Exclude Opinions and Testimony of Mr. Malackowski (Dkt. No. 71);
- **DENIES-AS-MOOT** Defendant's Motion to Exclude Opinions and Testimony of Dr. Johnson (Dkt. No. 76.)

**IT IS SO ORDERED**.